UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN B.,<br><br>                             Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                          Defendant. | Case No.:  3:18-cv-00609-W (RNB)<br><br>**REPORT AND<br>RECOMMENDATION REGARDING<br>CROSS-MOTIONS FOR SUMMARY<br>JUDGMENT**<br><br>**(ECF Nos. 13, 14)** |

This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

On March 26, 2018, plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits.  (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment.  For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

## PROCEDURAL BACKGROUND

On June 1, 2016, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning November 1, 2015. (Certified Administrative Record ["AR"] 323-24, 325-26.) After his claim was denied initially and upon reconsideration (AR 255-58, 261-65), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 268-69.) An administrative hearing was held on August 15, 2017. Plaintiff appeared at the hearing with counsel, and testimony was taken from him and a vocational expert ("VE"). (AR 194-222.)

As reflected in his September 14, 2017 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, at any time from November 1, 2015, the alleged onset date, through December 31, 2016, the date last insured. (AR 27-37.) On November 7, 2017, plaintiff requested review of the ALJ decision. (AR 319-22.) The ALJ's decision became the final decision of the Commissioner on January 26, 2018, when the Appeals Council denied plaintiff's request for review. (AR 1-4.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520.[1] At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of November 1, 2015 through his date last insured of December 31, 2016. (AR 29.)

At step two, the ALJ found that plaintiff had the following severe impairments: left shoulder arthropathy, a depressive disorder, an anxiety disorder, and posttraumatic stress disorder ("PTSD"). (AR 29.)

---

[1]     Unless otherwise indicated, all references herein to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 30.)

Next, the ALJ determined that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except as follows:

> "[H]e is limited to frequent overhead reaching with the non-dominant upper extremity and he is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours, to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product." (AR 31.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would be unable to perform the duties of plaintiff's past relevant work. (AR 36.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC could perform the requirements of representative unskilled occupations that existed in significant numbers in the national economy (*i.e.*, lab cleaner and housekeeping cleaner), the ALJ found that plaintiff was not disabled. (AR 36-37.)

## DISPUTED ISSUES

As reflected in plaintiff's summary judgment motion, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1.    Whether the ALJ erred in assessing the opinion of plaintiff's treating psychiatrist, Dr. Nuhic.

2.    Whether the post-hearing medical source statement of Dr. Nuhic submitted to the Appeals Council warrants remand.

3.      Whether the ALJ erred in evaluating plaintiff's disability rating with the Department of Veteran Affairs ("VA").

4.      Whether the ALJ erred in his adverse credibility determination.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

Preliminarily, the Court notes that, under the Commissioner's regulations, an impairment is severe only if it **significantly** limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 405.1520(c) (emphasis added). Basic work activities are "abilities and aptitudes necessary to do most jobs," including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* Social Security Ruling ("SSR")

85-28.[2]  Here, the ALJ did find at step two of the sequential evaluation process that plaintiff had severe mental impairments (*i.e.*, a depressive disorder, an anxiety disorder, and PTSD). (*See* AR 29.)   The ALJ proceeded to include limitations based on plaintiff's mental impairments in his determination of plaintiff's RFC.   Specifically, the ALJ found that plaintiff was "limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours, to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product."  (*See* AR 31.)

Accordingly, in the Court's view, the real issues presented by Disputed Issue Nos. 1, 3, and 4 is whether, in determining plaintiff's mental RFC, (a) the ALJ failed to properly consider the opinions of plaintiff's treating psychiatrist, Dr. Nuhic, to the effect that plaintiff was unable to work due to his mental condition, (b) the ALJ failed to properly consider the VA's disability rating, and (c) the ALJ failed to properly consider plaintiff's subjective symptom testimony.

## A.   Reversal is not warranted based on the ALJ's alleged failure to properly consider Dr. Nuhic's opinions.

The medical evidence of record before the ALJ included a letter dated October 14, 2016, that was cosigned by plaintiff's treating psychiatrist, Dr. Nuhic, and directed to the "Social Security Administrative Law Judge."  The letter advised that plaintiff had been at Sharp Mesa Vista Hospital under care of an interdisciplinary treatment team since June 7, 2016; and that his diagnosis was major depressive disorder and chronic PTSD.  (AR 744.) The letter further stated:

---

[2]    Social Security Rulings are binding on ALJs.  *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

"Due to multiple stressors, [plaintiff] continues to exhibit marked stress in forms of depression, anxiety, PTSD-symptoms. For the past two weeks [plaintiff] has had intermittent suicidal ideations, requiring more frequent individual therapy sessions and increased safety support. His symptoms of PTSD have been increasingly troublesome and disruptive for him. Some of these symptoms include: disruptive flashbacks, nightmares, intrusive and disruptive memories leading to panic-like behavior. [Plaintiff] is suffering from a severe level of mental illness and is unable to work at the present time. It is interfering with his daily activities, social life, or ability to concentrate. We do not believe he will be able to work in any capacity in the foreseeable future." (*Id.*)

The letter further indicated that plaintiff needed to continue his treatment, requested that plaintiff's appeal be expedited, and "strongly encourage[d]" the granting of benefits. (*Id.*)

The medical evidence of record before the ALJ also included a memo dated May 23, 2017, that was cosigned by Dr Nuhic and addressed to plaintiff. (AR 745.) The memo confirmed that plaintiff had continued to receive treatment, including individual therapy services. It described some of the PTSD symptoms plaintiff had reported over the past six months (*i.e.*, "decreased quality of sleep, more frequent nightmares, hyperarousal, psychomotor agitation, inability to relax, restlessness, ongoing worrying, depressed mood and suicidal ideations"). The memo recommended that plaintiff "continue to engage in mental health services to address ongoing impairments in psychological functioning due to [his] PTSD symptoms and to reduce risk of worsening of symptoms." (AR 745.) The memo further stated:

"At this time, Dr. Nuhic recommends that to further stabilize your service connected PTSD symptoms you utilize behavioral health services full time and re-engage in IOP services to further address symptomology and safety concerns, and employment is not recommended." (*Id.*)

After referencing the foregoing two medical source statements, the ALJ stated that he was according "little weight to the conclusions therein that due to 'a severe level of mental illness' the claimant is 'unable to work' and that his condition is 'interfering with his daily activities, social life, or ability to concentrate' and that they 'do not believe he

6

will be able to work in any capacity in the foreseeable future,' and to the statement on May 23, 2017 that 'employment is not recommended.'" (*See* AR 32.)

### 1. Law applicable to the evaluation of medical opinions

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here,[3] a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

### 2. Analysis

Here, one of the reasons proffered by the ALJ for not crediting Dr. Nuhic's opinions to the effect that plaintiff was unable to work was that an opinion that plaintiff was disabled

---

[3] The Court notes that Dr. Nuhic's opinions to the effect that plaintiff's mental impairments rendered him unable to work were controverted by Dr. Gregory Nicholson, a consultative examiner. Based on his comprehensive mental status examination, Dr. Nicholson opined in his September 20, 2016 examination report that plaintiff had no more than mild limitations in mental functioning. (*See* AR 558-63.)

was a matter reserved to the Commissioner. (See AR 32.) However, the fact that a treating physician rendered an opinion on the ultimate issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons for rejecting it. *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work. . . . A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. . . . In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (finding that ALJ had failed to give sufficiently specific reasons for rejecting the conclusion of plaintiff's treating orthopedist that plaintiff was "permanently disabled from his medical condition as well as his orthopaedic problems").

Thus, the question becomes whether the ALJ satisfied his obligation under Ninth Circuit jurisprudence with his other reasons for not crediting Dr. Nuhic's opinions to the effect that plaintiff was unable to work due to his mental impairments. One of those other reasons was that that Dr. Nuhic had not articulated specific functional limitations.[4] (*See* AR 32.) The Court finds that this constituted a legally sufficient reason for not crediting Dr. Nuhic's opinions. *See Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018)

---

[4] Plaintiff contends that Dr. Nuhic's medical source statements "separately and combined support a finding that [plaintiff] would be off task for one hour during the work day and would miss more than two days of work per month." (*See* ECF No. 13-1 at 6.) However, Dr. Nuhic did not expressly render either such opinion in either of his medical source statements that were part of the record before the ALJ. (*See* AR 744, 745.) Moreover, plaintiff's contention that, if he were engaged in full time behavioral health service and continued treatment as Dr. Nuhic recommended in his May 23, 2017 memo, he would miss more than two days of work of month is undermined by the absence of any evidence before the ALJ that, after Dr. Nuhic made that recommendation, plaintiff increased the frequency of his visits to his mental health service providers to more than two times a month.

("An ALJ does not err by not incorporating a physician's opinion when the physician had not 'assign[ed] any specific limitations on the claimant.'" (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ not required to credit medical evidence that did not show how a claimant's symptoms "translate into specific functional deficits which preclude work activity"); *see also Johnson v. Shalala,* 60 F.3d 1428, 1432–33 (9th Cir.1995) (ALJ may reject an opinion as conclusory if it includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period).

Another reason cited by the ALJ for not crediting Dr. Nuhic's opinions was that they were inconsistent with the objective medical evidence of record. (*See* AR 32-33.) Based on its own review of plaintiff's treatment records, the Court concurs. Plaintiff never received any psychiatric emergency treatment and was never hospitalized for inpatient treatment. Dr. Nuhic's own treatment notes reflected that, while plaintiff consistently presented with a depressed and anxious mood, he also consistently exhibited good eye contact, normal speech, linear thought processes, appropriate affect, intact cognitive functioning, fair insight and judgment, and good impulse control. (*See* AR 573-74, 575, 577, 579, 581, 719, 721, 723, 725, 727, 734.) While plaintiff did report to Dr. Nuhic on October 14, 2016 that he had had thoughts about suicide the day before after he found out his application for social security benefits had been denied, plaintiff denied feeling suicidal that day and denied suicidal ideation on his other visits to Dr. Nuhic. (*See id.*) Dr. Nuhic's treatment notes also reflected that plaintiff's symptoms had improved with medication. (*See* AR 719, 721.) The treatment notes did not substantiate the existence of any significant deficits in social functioning, concentration, or daily activities. The Court therefore finds that this reason also constituted a legally sufficient reason for not crediting Dr. Nuhic's opinions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ properly rejected treating medical opinion that was "inconsistent with the medical records"); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes

constitutes a specific and legitimate reason for rejecting the treating physician's opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that treating physician's opinion that was "unsupported by rationale or treatment notes, and offered no objective medical findings" to support diagnoses was properly rejected); *Johnson*, 60 F.3d at 1433 (holding that contradiction between doctor's treatment notes and finding of disability was valid reason to reject treating physician's opinion).

Another reason cited by the ALJ for not crediting Dr. Nuhic's opinions to the effect that plaintiff was unable to work due to his mental impairments was that it was inconsistent with plaintiff's self-reported activities. (*See* AR 32.) Again, the Court concurs. The record reflected that plaintiff regularly engaged in exercise and sporting event activities well beyond the level of activity that would be commonly associated with a depressed or isolative individual. Progress notes documented that plaintiff enjoyed running and swimming and trained for marathons, triathlons and iron man competitions. (*See* AR 573, 579, 712, 716, 719, 721.) Plaintiff testified at the administrative hearing that he had competed in two athletic events in 2016. (*See* AR 208.) In November 2016, plaintiff reported that he was swimming daily. (*See* AR 606.) In April 2017, plaintiff reported competing in a triathlon. (*See* AR 723.) In May 2017, plaintiff reported attending a race and doing well. (*See* AR 711.) The Court concurs with the Commissioner that it was reasonable for the ALJ to find that such extensive physical training and activity suggested that plaintiff's mental impairments did not affect his daily activities and social life to such a degree as to render him completely unable to work. The Court therefore finds that this reason also constituted a legally sufficient reason for not crediting Dr. Nuhic's opinions.

*See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating physician's opinion of disability that was inconsistent with claimant's level of activity)

      The ALJ's other reason for not crediting Dr. Nuhic's opinions was that plaintiff's treating sources were actively assisting his attempt to obtain benefits rather than simply providing necessary medical treatment. (*See* AR 32.) The record does substantiate that Dr. Nuhic was actively assisting plaintiff's attempt to obtain benefits, and that both the October 14, 2016 letter and the May 23, 2017 memo were specifically written for that purpose. (*See* AR 578, 719.) Plaintiff maintains that, under *Reddick*, this is not a legitimate reason for not crediting Dr. Nuhic's opinions. However, in *Reddick*, 157 F.3d at 726, the Ninth Circuit recognized that, while it might not always be the case, "[e]vidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report." Here, as discussed above, the opinions contained in Dr. Nuhic's letter and memo were not consistent with the objective medical evidence of record. The Court therefore finds that this reason also constituted a legally sufficient reason for not crediting Dr. Nuhic's opinions. *See Smith v. Comm'r of Soc. Sec.*, 602 F. App'x 390, 391 (9th Cir. 2015) (the fact that "Dr. Nelson acted as an advocate for [the claimant's] disability" was a clear and convincing reason for discounting the treating doctor's opinion)); *Bagoyan Sulakhyan v. Astrue,* 456 F. App'x 679, 682 (9th Cir. 2011) (ALJ properly rejected physician's reports that "contained an advocate's tone rather than that of a treating physician"); *Buckner–Larkin v. Astrue,* 450 F. App'x 626, 627 (9th Cir. 2011) (ALJ properly discounted treating physician's opinion on ground that he "appeared to be more of an advocate than an objective examiner" when finding was "supported by the record"); *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996) (ALJ properly discounted treating physician's report obtained solely for purposes of administrative hearing); *Matney v. Sullivan,* 981 F.2d 1016, 1020 (9th Cir. 1992) (holding that ALJ properly determined treating physician's opinions "were entitled to less weight" because evidence showed that

physician "had agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits").

In sum, although the ALJ proffered one legally insufficient reason for not crediting Dr. Nuhic's opinions to the effect that plaintiff was unable to work due to his mental impairments, the error was harmless because the ALJ also proffered four independent, legally sufficient reasons supported by substantial evidence. *See Howell v. Comm'r Soc. Sec. Admin.*, 349 F. App'x 181, 184 (9th Cir. 2009) (ALJ's erroneous rationale for rejecting treating physician's opinion was harmless because the ALJ otherwise provided legally sufficient reasons to reject opinion) (citing *Stout v. Comm'r of Soc. Security*, 454 F.3d 1050, 1054 (9th Cir. 2006))); *see also Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rules applies to review of administrative decisions regarding disability).

The Court therefore finds that reversal is not warranted based on the ALJ's alleged failure to properly consider Dr. Nuhic's opinions in determining plaintiff's mental RFC.

**B. <u>Reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's VA disability rating</u>.**

In his summary judgment motion, plaintiff avers that, during the pendency of his Social Security disability claim, he applied for VA disability benefits; and that, on July 6, 2017, the Department of Veterans Affairs issued its decision granting entitlement to VA disability benefits. Specifically, the VA assigned a 70 percent disability rating based on plaintiff's PTSD. (*See* ECF No. 13-1 at 4-5, citing AR 334-36.) Further according to plaintiff, two weeks before the administrative hearing, the VA increased plaintiff's disability rating based on PTSD to 100 percent. (*See* ECF No. 13-1 at 5, citing AR 53.)

In his decision, the ALJ stated that he was not according the VA rating substantial weight for several reasons. (*See* AR 35.)

1. Law applicable to consideration of VA ratings

The VA assigns disability ratings for PTSD according to the *General Rating for Mental Disorders*, as set forth at 38 C.F.R. § 4.130. The specific criteria for disability ratings ranging from 0% to 100% are as follows:

| | Rating |
|---|---|
| Total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. | 100 |
| Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. | 70 |
| Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. | 50 |
| Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). | 30 |

| Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. | 10 |
|---|---|
| A mental condition has been formally diagnosed, but symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication. | 0 |

In *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), the Ninth Circuit held that an ALJ must always consider a VA rating of disability and must ordinarily give "great weight" to such a rating. An ALJ may give "less weight" to a VA rating of disability only if the ALJ states "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citation omitted); *see also Luther v. Berryhill*, 891 F.3d 872, 876-77 (9th Cir. 2018); *Valentine*, 574 F.3d at 695.[5]

### 2.   Analysis

As a preliminary matter, the Court notes that the only evidence of record cited by plaintiff in support of his assertion that the VA increased his disability rating based on PTSD to 100 percent two weeks before the August 15, 2017 administrative hearing is a progress note generated by Dr. Nuhic on August 1, 2017. Dr. Nuhic noted that plaintiff

---

[5]     The applicable regulations have now been amended so that an ALJ no longer is required to provide any written analysis of disability decisions by other agencies for Social Security disability claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1504 (for Social Security disability claims filed "on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by another governmental agency or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits"). This amendment does not apply in this case because plaintiff filed his Social Security disability claim before March 27, 2017. Thus, it remains the case here that the ALJ was required to consider any disability decision issued by another agency and explain the weight, if any, accorded to it. *See Phang v. Berryhill*, 2017 WL 8186041, at *2 (C.D. Cal. Oct. 3, 2017).

had informed him on that visit of the increase in his disability rating. (*See* AR 53.) In any event, the relevant period for purposes of plaintiff's application for social security disability benefits was not the period between the date of his application and the date of the administrative hearing, but rather the period between November 15, 2015, his alleged onset date, and December 31, 2016, his date last insured. Thus, the mere fact that the VA supposedly increased plaintiff's disability rating two weeks before the administrative hearing was not in itself probative of plaintiff's VA disability rating during the relevant period. Nor does it follow from the VA's award of benefits on July 6, 2017 based on a disability rating of 70 percent that plaintiff's VA disability rating also was 70 percent during the relevant period. Indeed, there is an indication in plaintiff's treatment records that plaintiff reported to a VA provider on September 7, 2016 that he had had suicidal thoughts due to his finding out that the VA had just lowered his disability rating. (*See* AR 629.)

While the record thus is unclear regarding what plaintiff's VA disability rating was during the relevant period, it does appear from a notice to plaintiff dated November 21, 2016 that plaintiff was receiving VA disability benefits during the relevant period. (*See* AR 663-66.) Although the notice does not specify precisely what plaintiff's VA disability rating was at that time, it does indicate that plaintiff's claim for additional dependency benefits was being granted because he had "at least a 30% disability compensation evaluation." (*See* AR 664.) It was this notice evidencing that plaintiff was receiving VA benefits to which the ALJ was referring when he stated that he was not according substantial weight to the VA rating. (*See* AR 35, citing AR 663-73.)

It appears from the ALJ's decision that he had four reasons for not according substantial weight to the VA rating underlying the VA's decision to pay plaintiff VA disability benefits: (1) the VA did not provide any "substantive additional medical evidence" that would limit plaintiff to a more restrictive mental RFC than that found by the ALJ; (2) the procedures by which the Commissioner decides disability are not the same procedures by which the VA determines disability; (3) the medical evidence of record did

not support the VA disability rating; and (4) the VA rating was not an unemployability assessment. (*See* AR 35.)

The Court concurs with plaintiff that the ALJ's second and fourth reasons cannot be reconciled in themselves with the Ninth Circuit's holding in *McCartey*. *See McCartey*, 298 F.3d at 1076 ("The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework."); *see also Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010) (rejecting the second reason proffered by the ALJ here); *Valentine*, 574 F.3d at 695 (rejecting the fourth reason proffered by the ALJ here).

However, the Court finds that the ALJ's first and third reasons do constitute persuasive, specific, valid reasons for not according substantial weight to the VA rating underlying the VA's decision to pay plaintiff VA disability benefits. The ALJ's RFC determination did accommodate plaintiff's severe mental impairments by limiting him "to understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours, to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product." (AR 31.) To the extent that the VA's disability rating was more restrictive than the ALJ's mental RFC determination, the medical evidence of record did not support it. As discussed in the preceding section, Dr. Nuhic's treatment notes reflected that, while plaintiff consistently presented with a depressed and anxious mood, he also consistently exhibited good eye contact, normal speech, linear thought processes, appropriate affect, intact cognitive functioning, fair insight and judgment, and good impulse control. The treatment notes also reflected that plaintiff's symptoms improved with medication. The treatment notes did not substantiate the existence of any significant deficits in social functioning, concentration, or daily activities. Further, any disability rating more restrictive than the ALJ's mental RFC would have been inconsistent with plaintiff's self-reported activities.

In sum, the evidence of record before the ALJ did not support a finding that, during the relevant period, plaintiff ever met the criteria for a VA disability rating of 100 percent, which would have entailed such symptoms as "gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name."  Nor did the evidence of record before the ALJ support a finding that, during the relevant period, plaintiff ever met the criteria for a VA disability rating of 70 percent, which would have entailed such symptoms as "suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships."  Nor did the evidence of record before the ALJ support a finding that, during the relevant period, plaintiff ever met the criteria for a VA disability rating of 50 percent, which would have included such symptoms as "panic attacks more than once a week," "impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks)," "impaired judgment," and "impaired abstract thinking."  Moreover, in the Court's view, there is no incongruence between the criteria for a VA disability rating of 30 percent and the mental RFC determined by the ALJ.

Therefore, even if two of the ALJ's reasons for not according substantial weight to the VA rating underlying the VA's decision to pay plaintiff VA disability benefits were legally insufficient, the ALJ's error was harmless because the ALJ also proffered persuasive, specific, and valid reasons for doing so that are supported by the record.

Accordingly, the Court finds that reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's VA disability rating.

**C.** **Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination.**

    1.   Law applicable to consideration of a claimant's subjective symptom testimony

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). Under the "*Cotton* standard," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Smolen*, 80 F.3d at 1281; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

Here, the ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "were not entirely consistent with the medical evidence and other evidence in the record." (AR 33-34.)

    2.   Analysis

It appears from the ALJ's decision that he was basing his adverse credibility determination primarily on inconsistencies between plaintiff's subjective symptom testimony and other evidence in the record. For example, the ALJ noted that plaintiff testified that he had been in several athletic events but missed more than he attended due

to psychiatric symptoms. However, plaintiff's progress notes did not reflect any events that he may have signed up for but not attend. They showed that he reported "progress with self-care; marathon and triathlon; enjoys physical exercise; exploration of a career path." (*See* AR 33, citing AR 712.) Contrary to plaintiff's testimony that he did not have friends and did not get out much, progress notes dated April 3, 2017 showed that he exercised daily and was involved in iron man competitions requiring running and swimming. (*See* AR 34, citing AR 716.)

The ALJ also noted that, while plaintiff reported he had problems around people, there was little to no indication in the record that plaintiff was unable to participate in such activities as swimming at the YMCA and running, and engaging in competitive athletic events, due to alleged symptoms related to his mental impairments. (*See* AR 33.) The Court concurs with the ALJ that the record does not substantiate plaintiff's allegations of fear of social interaction. Indeed, progress notes from Positive Change Counseling Center dated April 3, 2017 reflect that plaintiff reported a fear of being alone, as opposed to a fear of being around people. (*See* AR 717.) In the Court's view, the limitations in the ALJ's RFC determination "to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product" adequately accommodated the severity of plaintiff's mental impairments on his ability to socially interact.

The ALJ also noted that plaintiff had testified his mind was "not good" and that he forgot things. However, the record clearly showed that plaintiff had no memory problems. (*See* AR 34, citing AR 515; *see also* AR 561.)

The ALJ also noted that, although plaintiff had a diagnosis of PTSD, depression, and anxiety, he was able to take care of his children, feed the family pets, perform some household cleaning chores, and drive a car, as well as pay bills and handle bank accounts. (*See* AR 35; *see also* AR 560.) Indeed, it appears from the record that, after plaintiff

separated from his wife, he was completely self-sufficient, including in connection with the custody of his children.  (*See* AR 711, 712.)

The Ninth Circuit has held that there are "two grounds for using daily activities to form the basis of an adverse credibility determination": Evidence of the daily activities either (1) contradicts the claimant's other testimony, or (2) meets the threshold for transferable work skills.  *See Orn*, 495 F.3d at 639.  Here, it appears that the ALJ was invoking the first ground.  The Court therefore finds that this reason constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Berry*, 622 F.3d at 1234-35 (evidence that claimant's self-reported activities suggested a higher degree of functionality than reflected in subjective symptom testimony adequately supported adverse credibility determination); *Valentine*, 574 F.3d at 693 (evidence that claimant exercised and undertook projects suggested that claimant's later claims about the severity of his limitations were exaggerated); *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Orn*, 495 F.3d at 639 (evidence of daily activities may form basis of an adverse credibility determination where it contradicts the claimant's other testimony).

In sum, the Court concurs with the ALJ's observation that plaintiff's "self-reported activity levels far exceed his alleged limitations and these inconsistencies in the claimant's reporting of his activities, juxtaposed to the objective of record that confirms a much higher level of functioning, calls into question the soundness of his allegations of disabling impairment."  (*See* AR 34.)

Accordingly, the Court finds that reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination.

**D.  The post-hearing medical source statement of Dr. Nuhic submitted to the Appeals Council does not warrant remand.**

In *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012), the Ninth Circuit held that the administrative record includes evidence submitted to and considered by the Appeals Council.  Under the Commissioner's regulations in effect on November 7, 2017, when plaintiff sought Appeals Council review of the ALJ's decision, claimants were permitted to submit new and material evidence to the Appeals Council and the Appeals Council was required to consider that evidence in determining whether to review the ALJ's decision so long as the evidence related to the period on or before the date of the ALJ decision and the claimant showed good cause for not submitting the evidence to the ALJ at least 5 business days before the administrative hearing.  *See* 20 C.F.R. §§ 404.935(a), 404.970(b).  Subject to the good cause requirement, if the Appeals Council receives evidence that is new, material, and relates to the period on or before the date of the hearing decision, the Appeals Council will grant the request for review if it finds "a reasonable probability that the additional evidence would change the outcome of the decision."  *See* 20 C.F.R. § 404.970(a)(5).  The Appeals Council advised plaintiff of these requirements when it granted his request for an extension of time on December 11, 2017. (*See* AR 8-9.)

Thereafter, plaintiff submitted, for the first time, a medical source statement from Dr. Nuhic, which was dated November 27, 2017 and which included both an assessment of plaintiff's mental functional limitations and a narrative section.  According to Dr. Nuhic, plaintiff had marked to extreme limitations in most categories of mental work-related activities.  Further, plaintiff needed to be reminded to keep appointments; needed assistance to care for his personal affairs, stayed at home, had significant difficulty in

sustaining attention and concentration, and had minimal ability to adapt to stress. (*See* AR 14-21.)[6]

In its Notice of Appeals Council Action, the Appeals Council advised *inter alia* that since the ALJ had decided plaintiff's case through December 31, 2016, the November 27, 2017 medical source statement from Dr. Nuhic did not relate to the period at issue and therefore did not alter the decision about whether plaintiff was disabled beginning on or before December 31, 2016. (See AR 2.)

The fact that Dr. Nuhic's medical source statement was generated after December 31, 2016 alone is not dispositive of whether the evidence was chronologically relevant. *See Lester*, 81 F.3d at 832 ("This court has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." (citation and internal quotation marks omitted)). In the instant case, since plaintiff was only insured through December 31, 2016, the question becomes whether Dr. Nuhic's November 27, 2017 medical source statement related to plaintiff's condition on or before December 31, 2016.

As discussed above, the evidence of record before the ALJ, including the medical evidence in the form of treatment notes and mental status examinations and the evidence of plaintiff's statements to his treating sources and plaintiff's administrative hearing testimony, established that prior to December 30, 2016, plaintiff was not dependent on his wife for his personal care or any activities of daily living, did not stay at home but rather maintained an active lifestyle that included going to the gym regularly and competing in athletic events, and had no deficits in attention or concentration. The Court therefore finds that the level of severity that Dr. Nuhic was ascribing to plaintiff's mental impairments on

---

[6] It appears from the Notice of Appeals Council Action that plaintiff also submitted additional treatment records from Sharp Mesa Vista Hospital for the periods December 13, 2016 to December 27, 2016, and May 23, 2017 to November 27, 2017. (*See* AR 2.) However, plaintiff is making no contention regarding this additional evidence.

November 27, 2017 did not relate to the level of severity of plaintiff's mental impairments on or before December 31, 2016. Accordingly, the Court concurs with the Appeals Council that Dr. Nuhic's medical source statement did not relate to the period at issue and consequently did not alter the decision about whether plaintiff was disabled on or before December 31, 2016. It follows that remand is not warranted for consideration of this new evidence.

## RECOMMENDATION

The Court therefore **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: July 25, 2019

_____
ROBERT N. BLOCK
United States Magistrate Judge

3:18-cv-00609-W (RNB)